UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DENNIS NAGLE, | ) | CASE NO. 4:08CV2161 |
| Plaintiff, | ) ) ) | JUDGE JOHN R. ADAMS<br>Magistrate Judge George J. Limbert |
| v. | ) ) | |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | ) ) ) | **REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |
| Defendant. | ) | |

Dennis Nagle ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. For the following reasons, the undersigned recommends that the Court AFFIRM the ALJ's decision IN PART and REVERSE IN PART:

**I.       PROCEDURAL AND FACTUAL HISTORY**

On December 1, 2003, Plaintiff filed applications for DIB and SSI. Tr. at 56-58, 194-200. Plaintiff's application was denied initially. Tr. at 39-42, 204-208. Defendant contends that Plaintiff's applications were denied on reconsideration. ECF Dkt. #24 at 1 citing Tr. at 37-38, 202-03. However, the documents to which Defendant directs the Court are initial denials, not reconsiderations. Further, Plaintiff's initial claims were filed in Pennsylvania[1] where, unlike in Ohio, claimants may request an administrative hearing following an initial denial rather than seeking reconsideration. *See* Tr. at 40, 206. Accordingly, there was no reconsideration in the instant case.

---

[1]       Plaintiff has since moved his residence to Ohio. ECF Dkt. #1 at ¶ 1; ECF Dkt. #17 at ¶1.

On April 20, 2004, Plaintiff filed a request for an administrative hearing. Tr. at 43. On August 9, 2005, an ALJ conducted an administrative hearing where Plaintiff was represented by counsel. *Id*. at 209-231. At the hearing, the ALJ heard testimony from Plaintiff and Charles Cohen, a vocational expert. *Id*. On November 22, 2005, the ALJ issued a Notice of Decision - Unfavorable. *Id*. at 18-28. On March 13, 2008, the Appeals Council denied Plaintiff's request for review. *Id*. at 4-6.

On May 16, 2008, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On February 13, 2009, Plaintiff filed a brief on the merits. ECF Dkt. #22. On April 15, 2009, Defendant filed a brief on the merits. ECF Dkt. #25. On April 30, 2009, Plaintiff filed a reply. ECF Dkt. #25.

**II.      SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

The ALJ found that plaintiff has the following severe impairments: remote history of C5 compression fracture; osteophytes and bulging discs at C3/4 and C5/6 with mild stenosis. Tr. at 23. The ALJ reasoned that Plaintiff has a history of C5 fracture from 1997. *Id*. at 24. Further, Plaintiff injured his neck while moving a heavy object and was diagnosed with cervical and thoracic strains. *Id*. The ALJ noted that an MRI showed mild stenosis and a C5 fracture. *Id*. The ALJ noted that Plaintiff continued to complain of neck pain and headaches and underwent another MRI in March of 2004, which showed osteophytes at C3/4 through C5/6 causing mild spinal stenosis bilateral neural foraminal narrowing. *Id*. Lastly, the ALJ noted that Plaintiff continued treatment at the Pain Clinic, which consisted of cervical and occipital injections. *Id*.

Next, the ALJ determined that Plaintiff did not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1, Regulations No. 4. Tr. at 24. The ALJ reasoned that Plaintiff suffered from bulging discs and osteophytes of the cervical spine, resulting in foraminal narrowing of the spinal canal and mild stenosis; however, the MRI showed no evidence of nerve root compression, arachnoiditis, or pseudoclaudication. *Id*.

The ALJ proceeded to determine that Plaintiff retained the residual functional capacity ("RFC") to lift and carry up to 10 pounds occasionally and, 2 to 3 pounds frequently, with no limitations in sitting, standing and walking. Tr. at 24. The ALJ concluded that Plaintiff's capacity for work was further limited by an inability to push and pull with his upper extremities, balance or climb; as well as performing only occasional stooping, kneeling, crouching, and bending, and avoiding exposure to temperature extremes. *Id.*

In reaching this RFC, the ALJ first reviewed Plaintiff's subjective complaints. Tr. at 24. The ALJ noted that Plaintiff testified that Plaintiff stopped working due to pain in his arm and his back. *Id.* Plaintiff further claimed to experience daily headaches, neck pain, and left arm numbness. *Id.* The ALJ noted that Plaintiff contended that he could lift less than 10 pounds, that he is only able to walk for 30 minutes at a time before he feels pain in his neck and shoulder, and that he is only able to stand for about one hour. *Id.* When sitting, Plaintiff contended that he could feel pain in the bottom of his neck. *Id.*

After considering Plaintiff's complaints, the ALJ determined that his medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that his statements concerning the intensity, duration, and limiting effects of the symptoms are not entirely credible. Tr. at 24. The ALJ reasoned that Plaintiff initially sought treatment for his neck sprain from his treating general practitioner, Michael Fiorina, D.O. Plaintiff was initially referred for physical therapy, which was not helpful, and he was therefore referred to Frank Kunkel, M.D., a pain management specialist. *Id.* at 24-25. In November of 2002, Dr. Kunkel examined Plaintiff, and Plaintiff reported neck pain radiating into his extremities. *Id.* at 25. However, an examination revealed full cervical motion, no sensory deficit, and intact reflexes. *Id.* The ALJ noted that Plaintiff was treated with a series of epidural injections, but he still complained of ongoing neck pain as well as severe headaches. *Id.* The ALJ noted that an examination in February of 2003 at the Pain Management Clinic continued to reveal no neurological symptoms in his upper or lower extremities. *Id.* The ALJ noted that Plaintiff continued to complain of mid back and neck pain, but by August of 2003, he reported that he was 70 percent better and continued to have a full range of motion of his neck, as well as intact sensory function. *Id.*

The ALJ further noted that in March of 2004, Plaintiff reported to Dr. Kunkel that his pain had improved and he was more functional than at the time of his injury, but he was unable to drive anymore because he could not turn his head from side to side. Tr. at 25. The ALJ noted that Plaintiff, at his own request, was referred to a neurosurgeon for evaluation. *Id.* In April of 2004, he presented to Matt El-Kadi, M.D. with complaints of neck and mid back pain, numbness and tingling of his hands and all fingers, as well as headaches accompanied by dizziness every two to three days. *Id.* The ALJ noted that Dr. El-Kadi initially thought surgery would be appropriate; however, electromyography and nerve conduction studies were performed which were within normal limits. *Id.* The ALJ noted that the neurosurgeon considered the results of the diagnostics test and determined that Plaintiff had no significant radiculopathy and his myelogram/CT scan was not impressive; and therefore surgery was not warranted. *Id.*

The ALJ noted that Plaintiff reported to Dr. Kunkel that his functionality had improved under his care. Tr. at 25. The ALJ specifically noted that in August of 2003, Plaintiff reported that he was able to sit longer in his care and was able to move his neck more. *Id.* In November of 2003, Plaintiff stated that he was able to move around with ease and with only moderate pain, and that he could watch television for longer periods of time. *Id.* In December of 2003, Plaintiff stated that he was able to move around and enjoy watching television with little discomfort, but he requested a surgical consultation, which Dr. Kunkel provided. *Id.* The ALJ noted that Plaintiff did not follow through with the consultation and in March of 2004 he gave conflicting statements indicating that he was unable to drive, but that he was 100 percent better since starting treatment at the Pain Clinic. *Id.* The ALJ noted that in September of 2004, Plaintiff reported being able to perform additional activities of sitting and playing games with his kids, as well as riding in the car longer. *Id.*

The ALJ then concluded that Plaintiff reported inconsistent symptoms to his treating physicians regarding his radiating pain. Tr. at 25. The ALJ reasoned that on April 1, 2004, he reported to Dr. El-Kadi that he experienced bilateral arm pain and numbness, worse on the right, but on April 22, 2004, he reported that he had pain and numbness of the left arm, hand and fingers, and he denied pain on the right. *Id.* The ALJ further noted that on April 28, 2004, an examination revealed patchy sensory deficit of the left upper extremity, but on June 2, 2004,although he

complained of left upper extremity pain and numbness, he exhibited patchy deficit on the right. *Id.* The ALJ further noted that Dr. Kunkel's recent examinations demonstrated sensory function to be intact. *Id.*

The ALJ went on to note that Plaintiff reported that lifting, twisting, and turning his head, as well as cold weather, caused his pain to be worse. Tr. at 25. The ALJ noted that Plaintiff reports that sitting in a chair, applying heat, and taking medication improve his symptoms. *Id.* at 25-26. The ALJ noted that Plaintiff had taken narcotic pain medication for two years with no side effects, but he no longer takes pain medication; he just limits his activities to manage his pain. *Id.* at 26.

The ALJ highlighted two of Dr. Kunkel's reports. Tr. at 26. In August of 2003, he opined that Plaintiff would be limited to less than 30 hours of work per week secondary to compression fracture at C5, and that he could not perform any bending or twisting of the neck. *Id.* The ALJ noted that Dr. Kunkel reiterated this opinion in February of 2004 and opined that Plaintiff would be temporarily disabled until December 30, 2004. *Id.* The ALJ stated that Dr. Kunkel's opinions are relatively consistent with the other evidence of records except for the restriction to less than a 40-hour work week. *Id.* at 27.

The ALJ stated that he was affording little weight to the assessment of Disability Determination Service Consultants, who concluded that Plaintiff was capable of performing a full range of light work. Tr. at 26.

The ALJ afforded great weight to the opinion of consultative examiner, Dr. Demby. Tr. at 26. The ALJ reasoned that Dr. Demby's opinion that Plaintiff could perform a limited range of light work with limitations in lifting and postural activities and limitations in working around temperature extremes, was consistent with the objective evidence of record. *Id.*

In reaching these conclusions regarding the medical opinions, the ALJ reasoned that Plaintiff testified that he feels sensation in the bottom of the neck when sitting but he did not indicate any present limitations with sitting. Tr. at 26. The ALJ states that "This is consistent with his reports to treating physicians that his neck pain is better with sitting in a chair. He also reported that he is able to sit comfortably to watch television, as well as testifying that he is able to play video games." *Id.* The ALJ also noted that Plaintiff is able to prepare meals for his two children and to get them

ready for school. *Id.* at 27. Further, the ALJ noted that Plaintiff can perform a number of household chores with some restrictions due to neck pain and he can meet his goals within the confines of restrictions on specific activities due to pain. *Id.* Accordingly, the ALJ found that Plaintiff could perform a limited range of light work on a sustained basis, as outlined above.

Based on the foregoing RFC, the ALJ determined that Plaintiff is capable of performing his past relevant work as a security officer. Tr. at 27. The ALJ noted that Plaintiff worked as a security officer from February of 1998 to July of 1998 and again from July of 2000 to March of 2001. *Id.* The ALJ then noted that the vocational expert testified that, comparing Plaintiff's RFC with the physical and mental demands of his past relevant work, he believed Plaintiff could return to his past relevant work as a security officer. *Id.*

The ALJ stated that, although counsel proposed additional limitations including the non-usage of the left hand and incapacitating headaches every one to two weeks, there was no evidence that one hand is worse than the other, and Plaintiff has made inconsistent statements about the symptoms in his upper extremities. Tr. at 27. Further, the ALJ noted that Plaintiff has never been diagnosed by a neurologist with migraines and he has not sought specific treatment from his treating physicians or the emergency department of the hospital for episodes of migraine headaches and he takes nothing but over the counter medications for the pain. *Id.* Lastly, the ALJ noted that "The claimant states that he lays down in his recliner during the day, but he also reported to Dr. Kunkle [sic] on several occasions that his pain is eased by 'sitting up' in a chair, he also reported that he plays video games and there is no indication that he does this from his recliner." *Id.* at 27-28.

Accordingly, the ALJ found that Plaintiff was not disabled.

### III.  STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV.    STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532.

Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

**V.      ANALYSIS**

      **A.      Whether the ALJ erred in disregarding the medical opinion of Plaintiff's treating physician**

Plaintiff contends that "[i]t is clear that the ALJ misinterpreted much of the evidence, such that, he did not give any weight to the opinion of Dr. Kunkel." ECF Dkt. #22 at 12. Plaintiff reasons that the basis of the decision to discount the opinion of Dr. Kunkel was based on a number of factual errors. *Id.*

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security. Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson*, 378 F.3d at 544. A presumption exists that the opinion of a treating physician is entitled to great deference. *Id.*; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). Accordingly, if that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544. "The determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985). When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion: the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. SSR 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's

medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and she may therefore " 'be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

First, Plaintiff's assertion that the ALJ did not give any weight to Dr. Kunkel's opinion is misplaced because the ALJ stated that "Dr. Kunkle's [sic] opinion is relatively consistent with the other evidence of record except for the restriction to less than a 40-hour work week." Tr. at 27. Further, Plaintiff does not specifically identify a substantive portion of Dr. Kunkel's opinion that the ALJ improperly objected. Since the ALJ gave some weight to part of Dr. Kunkel's opinion, and Plaintiff has not pointed the Court to any opinion that is entitled to controlling weight, the undersigned recommends that the Court reject this claim.

The undersigned specifically notes that, in identifying Dr. Kunkel's opinions, Plaintiff states that:

> On August 21, 1003, Dr. Kunkel indicated that due to his physical limitations, Plaintiff **was limited to working 30 hours or less a week**. (R. 138). Then on February 4, 2004, Dr. Kunkel completed another report indicating that Plaintiff **was temporarily incapacitated which precluded all employment** and that such incapacity was expected to last until December 30, 2004. (R. 191-192).

ECF Dkt. #22 at 12 (emphasis added). The foregoing opinions, or at least the portions to which Plaintiff directs the Court, however, they are *opinions of disability*, which are ultimately the province of the Commissioner and are not entitled to controlling weight. *See Warner*, 375 F.3d at 390. Further, Dr. Kunkel's opinion of August 21, 2003 appears to be inconsistent because it states that Plaintiff's capacity is "unlimited with accommodations" but also that his capacity is limited such that he can only work less than 30 hours a week. Tr. at 138. It is difficult to see how this

opinion is consistent with itself, let alone other evidence of record, and it was therefore not entitled to controlling weight. *See Wilson*, 378 F.3d at 544. Lastly, Dr. Kunkel's opinion is mostly illegible and does not indicate the basis of the opinion. *See* Tr. at 138.

Dr. Kunkel's February 4, 2004 opinion is likewise not compelling because it only opines that Plaintiff will be disabled until December 30, 2004, which does not satisfy the 12-month duration requirement. *See* 20 C.F.R. § 404.1509. And, as with Dr. Kunkel's August 21, 2003 opinion, he does not state the basis for the opinions. Tr. at 191.

Accordingly, because Plaintiff challenges only the ALJ's failure to give controlling weight to Dr. Kunkel's opinions that Plaintiff was limited to working 30 hours or less a week or that he was temporarily incapacitated – opinions on the ultimate issue of disability rather than opinions on physical restrictions – the Court need not look to the ALJ's rationale for rejecting them. *See* ECF Dkt. #22 at 12 (as to Plaintiff's claim). Those opinions are not the type of opinions that are entitled to controlling weight. *See Warner*, 375 F.3d at 390. Accordingly, the undersigned recommends that the Court dismiss Plaintiff's first claim.

**B.     Whether the ALJ erred in assessing Plaintiff's RFC**

Plaintiff next contends that the ALJ erred in determining his RFC. ECF Dkt. #22 at 17.

Plaintiff contends that Dr. Kunkel's reports indicated that Plaintiff was disabled for a period in excess of sixteen months. ECF Dkt. #22 at 17. Plaintiff further contends that Plaintiff testified at the administrative hearing that he needs to lie down for significant periods during the day due to pain in his neck. *Id.* Lastly, Plaintiff contends that diagnostic tests indicate substantial positive findings with regard to his neck and significant pain with almost any activity. *Id.* at 18. Plaintiff concludes that he should therefore be found disabled. *Id.* Plaintiff reasons that "there is substantial evidence that Plaintiff is not physically able to do the light work as determined by the Administrative Law Judge." *Id.* This is the incorrect standard, however, as the Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters,* 127 F.3d at 528.

Further, Plaintiff's argument is insufficient to inform the Court of the basis of his claim. The Court is not obligated to make Plaintiff's case for him simply because he has pointed to a potential inconsistency. *See Crawford v. Crestar Foods*, 210 F.3d 371 (Table), 2000 WL 377349, *2 (6th Cir. Apr. 6, 2000); *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.") (internal citation omitted); *Reeves v. Ratliff*, Case No. Civ.A.05CV112-HRW, 2005 WL 1719970, *2 (E.D.Ky. July 21, 2005), unreported (" Judges are not required to construct a party's legal arguments for him."); *Hedgewood v. Blanton*, 1995 WL 646217 (N.D.Ill., Nov.2, 1995).

Here, Plaintiff does not even identify which portion of the RFC is objectionable or what specific evidence, diagnostic findings, or medical opinions erode the substantial evidentiary basis that is presumed to underlie the ALJ's decision.  *See* ECF Dkt. #22 at 17-18.  Although Plaintiff does raise potential factual errors in the ALJ's decision in the portion of his brief related to Dr. Kunkel's opinion, Plaintiff has provided no guidance as to what arguments, if any apply to the ALJ's RFC findings.  Even assuming that all of Plaintiff's arguments apply to the ALJ's RFC findings, the Court would still have to speculate or develop Plaintiff's legal arguments regarding which portions of the RFC are specifically objectionable as unsupported by substantial evidence.  The fact that Plaintiff points to his own testimony and medical records purportedly showing vocational limitations does nothing but arguably show that substantial evidence would support a finding of disability.  The correct standard for the Court to apply, however, is whether the ALJ's decision is supported by substantial evidence, as Plaintiff's own brief acknowledges.  ECF Dkt. #22 at 17.

Besides pointing to evidence that purportedly supports a finding of disability, Plaintiff offers this statement of law:

> Courts have held that opinions of both reviewing, non-examining physicians and physicians who have only examined the Plaintiff on one occasion, when contrary to evidence of examining physicians are entitled to little weight. *Lamb vs. Bowen*, 847 F.2d 698 (11th Cir. 1998).

ECF Dkt. #22 at 17.  Plaintiff does not expound on this statement of law as it would apply to his case.  Even if the Court were to assume that Plaintiff is arguing that ALJ erred in assessing his RFC by incorrectly relying on non-examining physicians and physicians who have only examined him on one occasion, Plaintiff's argument still fails because he has not pointed to a substantive opinion on physical limitation from Dr. Kunkel that is entitled to controlling weight.  As discussed in the previous section, Dr. Kunkel's opinion that Plaintiff is not able to work invades the Commissioner's province on determining disability.

Since Plaintiff has failed to articulate a cognizable claim regarding the ALJ's RFC determination, the undersigned recommends that the Court deny Plaintiff's second claim.

### C. Whether the ALJ erred in disregarding the testimony of the vocational expert and relying on an incomplete hypothetical question.

Third, Plaintiff contends that the ALJ "chose to ignore the answers provided by the Vocational expert in his ultimate conclusions cited in his Decision." ECF Dkt. #22 at 19.  Plaintiff reasons that the Vocational Expert in this case noted that no jobs would be available for an individual who needed to lie down several hours a day and that the only time an individual would be permitted to lie down would be during a break.  *Id.* at 18.  Plaintiff further notes that the Vocational Expert testified that if an individual would be unable to lie down for a period of approximately two and a half hours, he would not be employable.  *Id.*  And he opined that if an individual would be unable to work for a period of approximately two and a half hours once every one to two weeks due to migraine headaches, such an individual would not be able to engage in substantial gainful activity.  *Id.*

Plaintiff's argument lacks merit because the ALJ is not obligated to adopt the Vocational Expert's opinion in its entirety.  Indeed, it is not even possible to do so in cases such as this, where the ALJ and Plaintiff's attorney posed multiple hypothetical questions setting forth different physical limitations.  Rather, a vocational expert's testimony can constitute substantial evidence to support the Commissioner's findings that a claimant can perform a significant number of jobs in the

economy as long as the testimony is based on a hypothetical which accurately portrays the plaintiff's physical and mental impairments.  *See Davis v. Secretary of Health & Human Servs.*, 915 F.2d 186, 189 (6th Cir.1990);  *Varley v. Secretary of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).    Therefore, the ALJ may consider the Vocational Expert's answer to the hypothetical corresponding to the physical limitations that the ALJ ultimately determines to be appropriate.

Here, the ALJ determined Plaintiff's RFC, and Plaintiff has failed to articulate a cognizable challenge to that finding.  Accordingly, the undersigned fails to see a basis for Plaintiff's challenge to the ALJ's assessment of the Vocational Expert's testimony.  In fact, to assert that the ALJ "chose to ignore" the Vocational Expert's answers is misleading because the ALJ simply adopted the portion of the Vocational Expert's testimony that comported with Plaintiff's RFC.  *See* Tr. at 27 "The impartial vocational expert testified that in comparing the claimant's residual functional capacity with the physical and mental demands of his past relevant work, that he could return to his past relevant work as a security officer as he performed it and as is generally performed in the national economy.");  *see also* Tr. at 228-29 (Vocational Expert's answer to hypothetical based on Plaintiff's RFC).

Since the ALJ may only rely on an answer to a hypothetical that accurately reflects a claimant's impairments, the undersigned believes that in order for Plaintiff to establish error on this claim, Plaintiff must first establish that the ALJ erred in evaluating Plaintiff's RFC.  Otherwise, the ALJ was justified in relying upon the Vocational Expert's response to a hypothetical question that reflected the limitations in the RFC that the ALJ ultimately reached.  Plaintiff's physical limitations are not established by the fact that the Vocational Expert testified that *a hypothetical person* who needed to lie down or had migraines for two and a half hours would be an unemployable person. Therefore, without successfully challenging the ALJ's RFC determination, it is difficult to see how Plaintiff can establish an error regarding the Vocational Expert's opinion.

Again, it appears that Plaintiff is applying the incorrect standard.  The Vocational Expert's testimony may support his claim of disability *if it accurately reflects his limitations*, but the question is whether substantial evidence supports the ALJ's decision regarding the Vocational Expert's opinion – not whether substantial evidence would support the ALJ's reliance on a response to

another hypothetical question. And the threshold question in that determination is whether the ALJ erred in assessing Plaintiff's physical limitations or his RFC. Plaintiff has failed to sufficiently challenge the ALJ's RFC determination, and therefore Claim Three, which is reliant upon the validity of his claim relating to the RFC errors, does not support his contention that the ALJ "chose to ignore" answers to a hypothetical that embodied physical restrictions beyond Plaintiff's physical abilities. *See* ECF Dkt. #22 at 18-19. Accordingly, the undersigned recommends that the Court dismiss Plaintiff's third claim.

        **D.**       **Whether the ALJ erred in assessing Plaintiff's complaints of pain**

Lastly, Plaintiff contends that the ALJ erred in assessing his complaints of pain. ECF Dkt. #22 at 19-20. Plaintiff reasons that "the evidence is overwhelming and the diagnostic tests clearly show medically determinable impairments which could reasonably be expected to cause the pain which the claimant alleges he suffered." *Id.* at 19. Plaintiff contends that the medical evidence "overwhelmingly shows that Plaintiff needs to be in a reclined position for substantial periods of time during the day and that sitting with his feet on the floor causes pain after only 30 minutes." *Id.* at 19-20. Plaintiff, however, does not direct the Court to these medical records. In challenging the ALJ's credibility assessment, the only evidence of record to which Plaintiff directly points is his own testimony that he needs to refrain from almost all activities to minimize his pain. *Id.* at 20 citing Tr. at 226-27.

Plaintiff also contends that the ALJ discounted his testimony based on factual misinterpretations of the record. Plaintiff identifies three alleged factual inconsistencies in his first claim for relief. First, Plaintiff contends that the ALJ improperly found that he reported inconsistent symptoms to his treating physician. ECF Dkt. #22 at 12-14. Second, Plaintiff contends that the ALJ mischaracterized his testimony regarding his need to sit in a reclined position. *Id.* at 14-15. Third, Plaintiff contends that the ALJ incorrectly stated that Plaintiff has never been diagnosed by a neurologist with migraines and that he has not sought specific treatment from his treating physicians for episodes of migraine headaches. *Id.* at 15. In his fourth claim for relief, aside from

generally referring to factual inconsistencies[2] Plaintiff only specifically alludes to his testimony regarding his alleged need to rest in a recliner, and Plaintiff's fourth claim does not address the ALJ's alleged errors in observing inconsistent symptoms or in failing to seek treatment for episodes of migraine headaches. The undersigned finds only one of these alleged inconsistencies to be compelling.

Accordingly, the Court should consider only whether the ALJ erred in assessing Plaintiff's credibility based upon his interpretation of the evidence related to his alleged need to rest in a recliner. The undersigned recommends that the Court find that the ALJ erred in this regard because he plainly misconstrued Plaintiff's testimony and Dr. Kunkel's medical records.

The social security regulations establish a two-step process for evaluating pain. In order for pain or other subjective complaints to be considered disabling, there must be: (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

When a disability determination cannot be made on the basis of the objective medical evidence, an ALJ must analyze the plaintiff's credibility, considering his statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in 20 C.F.R. § 416.929 and Social Security Ruling 96-7p. Subjective complaints of pain can support a disability claim if objective medical evidence of an underlying condition exists in the record. *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 686 (6th Cir. 1992). Other relevant factors that the ALJ must consider include the claimant's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; and treatment or measures, other than medication, taken to relieve pain. 20 C.F.R. 416.929(c)(3)(i)-(vi); SSR 96-7p. However, an ALJ is not required to accept a plaintiff's own

---

[2] "It appears that the ALJ discounted Plaintiff's testimony based on his factual misinterpretations of the record." ECF Dkt. #22 at 20. Plaintiff, however, does not specifically identify the factual misinterpretations forming the basis for his fourth claim.

-15-

testimony regarding his pain. *Gooch v. Sec'y of Health and Human Servs.,* 833 F.2d 589, 592 (6th Cir. 1987). Since the ALJ has the opportunity to observe the claimant in person, great deference is given to the ALJ's conclusion about the claimant's credibility. *McCoy o/b/o McCoy v. Comm'r of Soc. Sec.,* 81 F.3d 44, 47 (6th Cir. 1995). Nevertheless, substantial evidence must support an ALJ's assessment of a claimant's credibility. *Id.* If the ALJ rejects or discounts the claimant's complaints as not credible, he must clearly state his reasons for doing so. *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994).

In this case, objective medical evidence does not establish the level of Plaintiff's pain. Rather, the Commissioner must consider Plaintiff's subjective complaints of pain, and therefore, assess his credibility. Remand is necessary because, in assessing Plaintiff's credibility, the ALJ mischaracterized Plaintiff's testimony and Dr. Kunkel's records regarding his alleged need to rest in a reclined position. The ALJ stated that:

> The claimant testified that he feels sensation in the bottom of the neck area ***when sitting***. However, he did not indicate that he presently has any limitations with ***this activity***. **This is consistent with his reports to his treating physicians that his neck pain is better with *sitting in a chair*. He also reported that he is able to sit comfortably to watch television, as well as testifying that he is able to play video games.**

Tr. at 26 (emphasis added). However, Dr. Kunkel's report states that Plaintiff's pain is "worsened by lying down on his back or side. **It is made to feel better by sitting *in a recliner* and heating pad.**" Tr. at 124 (emphasis added). In Finding Six, the ALJ stated that:

> The claimant states that he lays down in his recliner during the day, but he also reported to Dr. Kunkle [sic] on several occasions that his pain is eased by **"sitting up" in a chair**. He also reported that he plays video games and **there is no indication that he does this from his recliner**.
>
> The undersigned has evaluated the claimants subjective complaints and allegations, and has provided a residual functional capacity that takes into account his impairments to the extent that they are supported by the evidence of record.

Tr. at 28 (emphasis added). Although the ALJ did not make this finding during his pain analysis and assessment of Plaintiff's credibility, the ALJ's determination in Finding Six clearly shows that he was operating under the misconception in Finding Five that Plaintiff was not playing video games

or using the heating pad in his recliner. Further, in concluding Finding Six, the ALJ stated that he had considered Plaintiff's subjective complaints but found that they were not supported by the subjective evidence of record. This conclusion is based on a factual error by the ALJ as Dr. Kunkel's record clearly indicates that Plaintiff was using the heating pad in his recliner. Additionally, when the ALJ stated that there was no indication that Plaintiff had any limitations in sitting and he reasoned that Plaintiff was sitting to play video games because "there is no indication that he does this from his recliner" the ALJ erred because Plaintiff unequivocally testified to the contrary:

> Q:  . . . When you're sitting and doing either watching the tv or playing video games, are you in a recliner?
>
> A.  Yes.

Tr. at 225. Accordingly, the undersigned recommends that the Court find that the ALJ erred in finding that the Plaintiff's claims of pain were not credible based upon the evidence and testimony related to his alleged need to rest in a recliner. Further, the undersigned recommends that the Court remand the instant case for further factfinding, analysis, and articulation by the ALJ on this issue.

As a final matter, the undersigned notes that, even if the Court were to give Plaintiff the benefit of the doubt and consider Plaintiff's argument regarding the ALJ's other alleged factual misinterpretations, the undersigned finds that those claims lack merit. Plaintiff contends that the ALJ indicated that Plaintiff reported inconsistent symptoms to his treating physicians regarding his radiating pain. ECF Dkt. #22 at 12. Plaintiff contends that the ALJ's finding that Plaintiff reported "inconsistent symptoms" was based on the ALJ's misinterpretation of facts. *Id*. at 13. The ALJ stated as follows:

> The claimant reported inconsistent symptoms to his treating physicians regarding his radiating pain. On April 1, 2004 he reported to Dr. El-Kadi that he experienced bilateral arm pain and numbness, worse on the right. On April 22, 2004; however, he reported that he had pain and numbness of the left arm, hand and fingers, and denied pain on the right. On April 28, 2004, an examination revealed patchy sensory deficit of the left upper extremity; however, in [sic] June 2, 2004 although he complained of left upper extremity pain and numbness, he exhibited patchy deficit on the right. Furthermore, recent examinations by Dr. Kunkle [sic] demonstrated sensory function to be intact.

-17-

Tr. at 25. Plaintiff acknowledges the ALJ's analysis, and then challenges it by pointing to the record indicating that:

> What the ALJ failed to note was that on April 19, 2004, an invasive cervical myelogram was performed. (R. 160). When Plaintiff saw Dr. El-Kadi three days following the myelogram, he reported that he had complaints of headaches radiating to the left forearm with numbness and tingling of the fourth and fifth fingers. He stated that the symptoms were constant and he denied any pain of the right arm. (R. 187). Dr. Kunkel then saw Plaintiff five days later on April 28, 2004 and realized that Plaintiff was suffering the signs and symptoms of a spinal headache which can be caused by a myelogram. He instructed Plaintiff to call the radiologist where he had his myelogram performed and report the symptoms. He also indicated that he was available to perform a blood patch should they want to use his services. (R. 173-174).

ECF Dkt. #22 at 13. The undersigned fails to see how any of this evidence establishes that the ALJ erred in observing an inconsistency when Plaintiff reported bilateral arm pain – worse on his right on April 1, 2004, but on April 28, 2004 he denied any pain on his right side. Plaintiff's argument at page 13 appears to explain why Plaintiff could be expected to experience headaches: "Dr. Kunkel then saw Plaintiff five days later on April 28, 2004 and realized that Plaintiff was suffering the signs and symptoms of a spinal headache which can be caused by a myelogram. He instructed Plaintiff to call the radiologist where he had his myelogram performed and report the symptoms." ECF Dkt. #22 at 13. The fact that the myelogram may cause headaches does not render the ALJ's observation regarding Plaintiff's pain in his right arm to be false.

Plaintiff goes on to argue that "the ALJ failed to properly analyze the medical evidence to determine the reason that his symptoms of numbness changed subsequent to the myelogram on April 19, 2004." ECF Dkt. #22 at 14. Despite this conclusion, Plaintiff himself fails to explain the reason that his symptoms changed subsequent to the myelogram. *See Id.* Plaintiff simply contends that following the myelogram, Dr. Kunkel performed a blood patch without offering an explanation as to what a blood patch is or what the side effects of a blood patch are. Plaintiff also points to Dr. Mustovic's opinion as support because she noted that Plaintiff had diminished feeling in the fourth and fifth digits of his left hand on June 7, 2004. *Id*. citing Tr. at 185. As the ALJ noted, however, only a few days earlier, on June 2, 2004, Dr. Kunkel observed mild patchy sensory deficit on the *right*. Tr. at 168. However, Plaintiff told Dr. Mustovic that since the myelogram that he had

-18-

experienced "continuous numbness." Tr. at 184. Plaintiff's statement is inconsistent with the medical evidence and what he presents to the Court. On June 2, 2004, he reported numbness only on the right to Dr. Kunkel (Tr. at 168), but on June 7, 2004 he reported to Dr. Mustovic that he was experiencing numbness only on the left and that the numbness had been continuous since the myelogram of April 24, 2004 (Tr. at 184). Accordingly, the undersigned fails to see how Dr. Mustovic's opinion establishes any error in the ALJ's conclusion regarding Plaintiff's patchy sensory deficit.

Lastly, Plaintiff contends that the ALJ erred in stating that Plaintiff has never been diagnosed by a neurologist with migraines and that he has not sought specific treatment from his treating physicians for episodes of migraine headaches. ECF Dkt. #22 at 15. Plaintiff reasons that "there are two indications of *treatment* of neurologists." *Id.* Treatment is not the same as diagnosis. Neither Dr. Elawar nor Dr. Wapaenski, the neurologists to which Plaintiff directs the Court, have diagnosed Plaintiff with migraines. *See* Tr. at 112, 168, 184-86. Plaintiff informs the Court that physicians sent records to Dr. Wapenski, but never points to treatment notes showing a diagnosis of migraines. *See* ECF Dkt. #22 at 15. Plaintiff goes on to contend that he did seek specific treatment for episodes of migraine headaches, reasoning that on February 11, 2003, Dr. Zielke from Dr. Kunkel's office wrote a prescription for Imitrex for migraine headaches and Dr. Demby noted that Plaintiff was taking Imitrex. *Id.* Plaintiff's argument lacks merit because the ALJ stated that Plaintiff "has not sought **specific treatment** from his treating physicians or the emergency department of the hospital for **episodes of migraine headaches.**" Tr. at 27 (emphasis added). It appears that Plaintiff has misconstrued that ALJ's finding. The ALJ did not say that Plaintiff has never sought *any treatment* for migraine headaches. The ALJ stated that Plaintiff never sought *specific treatment* for *episodes of migraine headaches*. In other words, the ALJ discounted Plaintiff's complaints because he never reported to the emergency department of the hospital or called his treating physician seeking treatment for a specific episode of migraine headache.

Accordingly, even if the Court were to consider all of the alleged factual errors by the ALJ, the undersigned recommends that the Court find that the ALJ only erred in discrediting Plaintiff's

-19-

testimony regarding his need to rest in a recliner.

## VI. CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court AFFIRM the ALJ's decision IN PART and REVERSE it IN PART. The undersigned recommends that the Court remand the instant case for further factfinding, analysis, and articulation by the ALJ on Plaintiff's claims of pain based upon the evidence and testimony related to his alleged need to rest in a recliner.

IT IS SO ORDERED.

DATE: July 9, 2009  /s/George J. Limbert
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE